Citation Nr: 1714095 
Decision Date: 04/28/17 Archive Date: 05/05/17

DOCKET NO. 12-24 699 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Salt Lake City, Utah


THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent for hypertension. 

2. Entitlement to an initial rating in excess of 30 for gastroesophageal reflux disease (GERD) with esophagitis. 

3. Entitlement to an initial rating in excess of 10 percent for a left knee disability. 

4. Entitlement to an initial rating in excess of 50 percent for migraines. 


REPRESENTATION

Veteran represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

E. Skiouris, Associate Counsel
INTRODUCTION

The appellant is a Veteran who served on active duty from May 1988 to November 2010. This matter is before the Board of Veterans' Appeals (Board) on appeal from an April 2011 rating decision of the Salt Lake City, Utah, Department of Veterans Affairs (VA) Regional Office (RO), which granted service connection for left knee disability and GERD with 10 percent ratings each, and for hypertension and migraines with noncompensable ratings each. An interim July 2012 rating decision increased the rating for hypertension to 10 percent and the rating for migraines to 30 percent, both effective from the date of award of service connection. 

In December 2014, the Board remanded the Veteran's claims for further development. In July 2016, the RO increased the rating for GERD to 30 percent, and the rating for migraines to 50 percent, both effective from the date of award of service connection. However, it is noted that applicable law mandates that when an appellant seeks an increased rating, it will generally be presumed that the maximum benefit allowed by law and regulation is sought, and it follows that such a claim remains in controversy where less than the maximum benefit available is awarded. See A.B. v. Brown, 6 Vet. App. 35 (1993). The Board notes that, despite the award of the maximum scheduler rating for migraines, a higher evaluation is still available under extra-schedular criteria. Therefore, the issues are still in controversy and shall be adjudicated accordingly. AB v. Brown, 6 vet. App. 35 (1993). 

A SSOC was issued in July 2016, and the case has now been returned to the Board for further appellate action. The Board notes the SSOC only addressed the issues of hypertension and a left knee disability, and not the issues of GERD or migraines. Although no SSOC was issued with respect to the issues of GERD or migraines, the July 2016 rating decision was an adjudication of the claim, and the Board finds that the December 2014 Remand has been substantially complied with, and adjudication may proceed without prejudice to the Veteran. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (holding that there must be substantial compliance with the terms of a Board remand).

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of these electronic records. 

The issue of entitlement to an initial rating in excess of 10 percent for a left knee disability is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. Throughout the appeal period, the Veteran's hypertension has not been manifested by blood pressure readings with diastolic pressure predominantly 110 or more or systolic pressure predominantly 200 or more.

2. Throughout the appeal period, the Veteran's GERD and associated digestive disability is manifested by persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health. The disorder does not result in symptoms of pain, vomiting, material weight loss, and hematemesis or melena with moderate anemia, or other symptom combinations productive of severe impairment of health.

3. Throughout the appeal period, the Veteran's migraine headaches have been frequent and prostrating.

4. The Veteran's service-connected disability of migraine headaches has not been shown to be of such severity so as to preclude substantially gainful employment.






CONCLUSIONS OF LAW

1. The criteria for an initial rating in excess of 10 percent for hypertension have not been met. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. §§ 3.159, 4.1, 4.3, 4.7, 4.104, Diagnostic Code 7101 (2016).

2. The criteria for a rating in excess of 30 percent for GERD have not been met. 38 U.S.C.A. §§ 1155, 5103A, 5107(West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.114, Diagnostic Code 7346 (2016).

3. A 50 percent rating is the highest scheduler rating available for migraine headaches, and the evidence does not warrant referral for consideration of migraine headaches on an extra-schedular basis. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 4.3, 4.124a, Diagnostic Code 8100 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) imposes on VA an obligation to notify claimants of what information or evidence is needed for claim substantiation and respective evidentiary gathering duties. Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004). VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2016). 

This appeal deals with the initial ratings assigned following the grant of service connection. Further VCAA notice is not required with regard to the downstream issue in this appeal. Dingess v. Nicholson, 19 Vet. App. at 490-91 (2006); see also 38 C.F.R. § 3.159(b)(3)(i) (2016).

VA has made reasonable efforts to obtain adequately identified records. The information and evidence associated with the claims file includes the Veteran's service treatment records, service personnel records, post-service treatment records, and the Veteran's statements. The Board has also obtained VA treatment records and VA examination reports and opinions from March 2013. The reports contain all needed reports. Therefore the Board finds that the Veteran has been provided adequate medical examinations in conjunction with his claim. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (holding that a medical opinion is adequate when it is based upon consideration of a claimant's prior medical history and examinations and describes the disability in sufficient detail so that the evaluation of the claimed disability will be a fully informed one). 

The Board's December 2014 remand directed that the AOJ obtain copies of all outstanding VA treatment records, and the Veteran was to be asked to provide releases for VA to obtain records of his private treatment. The Veteran was sent a letter January 2015 and March 2015 requesting the Veteran provide releases for private treatment records, and any additional information and evidence pertinent to his claims. To date the Veteran had not identified a private provider. Outstanding VA treatment records were obtained. The AOJ was to ask the Veteran to provide releases for the VA to contact his employers to ascertain the impact of his migraine on his employment. Releases were obtained, and records from his employer were obtained. 

Accordingly, the requirements of the December 2014 remand were ultimately accomplished and there was substantial compliance with the remand directives. See Stegall v. West, 11 Vet. App. 268 (1998). 

The Veteran has not identified any pertinent evidence that remains outstanding. Accordingly, VA's duty to assist is met and the Board will address the merits of the claim.


II. Initial Ratings

A. Legal Criteria 

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule). See 38 C.F.R. Part 4 (2016). Ratings for service-connected disabilities are determined by comparing the veteran's symptoms with criteria listed in VA's Rating Schedule, which is based, as far as practically can be determined, on average impairment in earning capacity. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2016). 

The basis of disability evaluations is the ability of the body as a whole to function under the ordinary conditions of daily life, including employment. 38 C.F.R. § 4.10. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2016).

When entitlement to compensation has been established and a higher initial evaluation is at issue, the level of disability at the time entitlement arose is of primary concern. Although a rating specialist is directed to review the recorded history of a disability to make a more accurate evaluation, the regulations do not give past medical reports precedence over current findings. 38 C.F.R. § 4.2; Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Consideration must also be given to a longitudinal picture of the Veteran's disability to determine if the assignment of separate ratings for separate periods of time, a practice known as "staged" ratings, is warranted. See Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. Ap. 119 (1999).

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. § 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Board gives the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b) (West 2014).

B. Hypertension 

The Veteran's service-connected hypertension is evaluated as 10 percent disabling under 38 C.F.R. § 4.104, Diagnostic Code 7101. Under Diagnostic Code 7101, hypertension warrants a 10 percent evaluation with diastolic pressure predominantly 100 or more, or; systolic pressure predominantly 160 or more, or; minimum evaluation for an individual with a history of diastolic pressure predominantly 100 or more who requires continuous medication for control. A 20 percent evaluation is warranted for diastolic pressure predominantly 110 or more, or; systolic pressure predominantly 200 or more. A 40 percent evaluation is warranted when diastolic pressure is predominantly 120 or more. A 60 percent evaluation is warranted when diastolic pressure is predominantly 130 or more. 38 C.F.R. § 4.104, Diagnostic Code 7101.

The Veteran has argued that his hypertension warrants a higher rating than 10 percent. 

In July 2010 prior to discharge the Veteran was afforded a VA examination in conjunction with his claim. He reported taking Diltiazem, Losartan, and Lisinopril daily to treat his hypertension. He reported that he does not experience any overall functional impairment from this condition. Three blood pressure readings were taken and were as follows: 126/86, 124/84, and 122/88. On examination of the heart there was no evidence of congestive heart failure, cardiomegaly, or cor pulmonale.

In March 2013 he was afforded a VA examination. He takes continuous medication for his hypertension, to include Losartan and Diltizem. He has a history of a diastolic BP elevation of predominantly 100 or more. His current blood pressure readings were: 140/98, 142/100, and 138/96. His hypertension has no impact on his ability to work. 

Treatment records from VAMC reveal in August 2011, his blood pressure was 131/85, in July 2013 it was 145/94, and in October 2015 it was 135/96. 

A rating in excess of 10 percent is not warranted for the Veteran's service-connected hypertension because diastolic pressure predominantly 110 or more, or; systolic pressure predominantly 200 or more, has not been shown. His readings have predominantly fallen below 110 for diastolic and below 200 for systolic.

As reflected above, diastolic pressure predominantly 110 or more or systolic pressure predominantly 200 or more has not been shown. Accordingly, a rating in excess of 10 percent for hypertension is not warranted. 38 C.F.R. §§ 4.7, 4.104, Diagnostic Code 7101.

C. GERD

There are diseases of the digestive system, particularly within the abdomen, which, while differing in the site of pathology, produce a common disability picture characterized in the main by varying degrees of abdominal distress or pain, anemia and disturbances in nutrition. Consequently, certain coexisting diseases in that area, as indicated in the instruction under the title Diseases of the Digestive System, do not lend themselves to distinct and separate disability ratings without violating the fundamental principle relating to pyramiding. 38 C.F.R. §§ 4.14, 4.113. Ratings under Diagnostic Codes 7301 to 7329, inclusive, 7331, 7342, and 7345 to 7348, inclusive, will not be combined with each other. A single rating will be assigned under the Diagnostic Code which reflects the predominant disability picture, with elevation to the next higher rating where the severity of the overall disability warrants such elevation. 38 C.F.R. § 4.114. 

The Veteran's GERD and digestive disability is currently rated by analogy to hiatal hernia under 38 C.F.R. § 4.114, Diagnostic Code 7346, as that code is normally used to rate GERD due to similarity of symptom presentation. There is no other pertinent code. Under that diagnostic code, a 60 percent rating is warranted when there are symptoms of pain, vomiting, material weight loss, and hematemesis or melena with moderate anemia; or other symptom combinations productive of severe impairment of health. A 30 percent rating is warranted when there is persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health. 38 C.F.R. § 4.114, Diagnostic Code 7346.

Turning to the evidence of record, on examination in July 2010 the Veteran reported having GERD since 2009. The condition did not affect his general body health. Over the prior two years he reported gaining 15 pounds. He reported heartburn, epigastric pain, and reflux and regurgitation of stomach contents, which occur on a daily basis. He had no dysphagia, scapular pain, arm pain, hematemesis, passing of black-tarry stools, or nausea and vomiting. He used Nexium for treatment. He reported never having been hospitalized or having surgery for this condition. He reported having to take medication daily in order to control his symptoms. On examination his nutritional status was good, and there were no signs of malaise present. He was well-developed, well-nourished, and in no acute distress. He had esophagitis. There was no evidence of anemia or malnutrition. 

On March 2013 the Veteran was afforded a VA examination. He has had two esophagogastroduodenoscopy's (EGD) showing Barret's esophagus. He takes continuous medication to treat his condition, namely Omeprazole. The signs and symptoms included infrequent episodes of epigastric distress, pyrosis, reflux, regurgitation, sleep disturbances that occur four or more times per year lasting less than one day. He has nausea that is transient, occurring four or more times per years lasting less than one day at a time. He has vomiting that is transient, occurring four or more times per year, lasting less than one day at a time. There was no evidence of persistently recurrent epigastric distress, dysphagia, sub sternal arm or shoulder pain, anemia, weight loss, hematemesis, or melena. He does not have an esophageal stricture, spasm of the esophagus, or an acquired diverticulum of the esophagus. His esophageal conditions have no impact on his ability to work. 

The VA treatment records dated during the appeal period demonstrate an ongoing assessment that the Veteran's GERD and digestive symptoms were controlled on medication. In an August 2011 note, he had heartburn, and sour brash acid regurgitation that wakes him from sleep, mostly when he forgets to take Nexium. He reported dysphagia, and had no other GI symptoms. In February 2015, he had an EGD. The impression was salmon colored mucosa near the GE junction consistent with history of Barrett's esophagus, but an otherwise normal endoscopy. 

Upon careful review of the evidence of record, the Board finds that an increased rating is not warranted. Even considering the Veteran's lay testimony of his symptoms, his GERD and digestive disability does not result in symptoms of pain, vomiting, material weight loss, and hematemesis or melena with moderate anemia, or other symptom combinations productive of severe impairment of health. Specifically, the evidence does not support a finding of symptoms that more nearly approximate this combination of symptoms, and the Veteran has not stated contentions to the contrary. Accordingly, the claim must be denied.

D. Migraines 

The Veteran's migraine headaches have been rated as 50 percent disabling under Diagnostic Code 8100. Under Diagnostic Code 8100, which pertains to migraine headaches, a maximum 50 percent rating is warranted for migraine headaches with very frequent completely prostrating and prolonged attacks, productive of severe economic inadaptability. 38 C.F.R. § 4.124a, Diagnostic Code 8100.

Turning to the evidence of record, at an examination in July 2010, the Veteran reported headaches described as a jumping sensation in eyes and nausea. When headaches occur, he reported staying in bed and being unable to do anything. He reported headaches on average two times per month that last for four hours at a time. He takes Imitrex to treat his headaches. 

At the March 2013 VA examination, the Veteran reported getting three to four migraines per month. Treatment included Imitrex injections as well as Amitriptyline. He reported pulsating or throbbing pain, on both sides of his head that worsens with physical activity. Non-headache symptoms associated with his headaches are nausea, vomiting, sensitivity to light, sensitivity to sound, and changes in vision. The duration of typical head pain was reported as less than one day. He reported characteristic prostrating attacks of migraine headaches pain that occur more frequently than once per month. He reported frequent prostrating and prolonged attacks of migraine headache pain. He did not have prostrating attacks of non-migraine headache pain. The examiner concluded his condition does not impact his ability to work. The Veteran was employed full time as a program analyst. 

VA treatment records are consistent with the findings of the VA examination reports. 

In a June 2016 report of contact from Mr. C. S. of [redacted], he indicated the Veteran worked there from October 2011 to December 2012. Mr. S. reported the Veteran was afforded sick leave due to severe migraine headaches, and if not sick leave he was afforded the opportunity to work from home on particular occasions due to the headaches. Additionally, the Veteran was provided a darkened screen protector for his computer. Also, his location had a quiet room in a medical station area of his building, and he was afforded the accommodation to deal with headache episodes by utilizing this area. His work space was moved to a quieter area from its previous position, where there was a communal TV. Excess lighting was also removed from the Veteran's work area as well. 

In July 2016, a statement was received from [redacted] from the HR Director, M. K. Ms. K., indicated that the Veteran is a current employee of [redacted], and has the following accommodations: allow telework as part of his normal weekly schedule, allow him to take time off and/or leave early when needed, provide him with an opportunity to sit in a dark room when he requests, and provide screen filters for his computer. 

In this case, a rating higher than 50 percent for migraine headaches is not available under the rating schedule. The Board finds that a higher rating is not warranted under any other rating criteria, as the Veteran's symptoms, mainly frequent prostrating headaches with light sensitivity and visual changes, have been accounted for by the criteria listed in Diagnostic Code 8100. Accordingly, an increased or separate rating for migraine headaches is not warranted. Additionally, extra-schedular consideration is not warranted, for the reasons stated below.

III. Other considerations

The Board has also considered the Veteran's lay statements that his disabilities are worse than currently evaluated. The Veteran is competent to report symptoms because this requires only personal knowledge as it comes to him through his senses. Layno v. Brown, 6 Vet. App. 465 (1994). He is not, however, competent to identify a specific level of disability of this disorder according to the appropriate diagnostic codes. 

Such competent evidence concerning the nature and extent of the Veteran's disabilities has been provided by the medical personnel who have examined him during the current appeal and who have rendered pertinent opinions in conjunction with the evaluations. The medical findings (as provided in the examination reports and the clinical records) directly address the criteria under which this disability is evaluated. As such, the Board finds these records to be more probative than the Veteran's subjective complaints of increased symptomatology for his hypertension, GERD, and migraines. 

The Board has also considered whether extraschedular ratings are warranted under 38 C.F.R. § 3.321. The Veteran's hypertension, GERD, and migraines are manifested by symptoms contemplated by the rating schedule. The effects of the Veteran's disabilities have been fully considered and are contemplated in the rating schedule; hence, referral for an extraschedular rating is unnecessary at this time. In that regard, the rating criteria contemplates the Veteran's hypertension, reports of frequent migraines, as well as his digestive symptoms of pain, dysphagia, heart burn, infrequent vomiting, and burning sensation. Consideration of whether the Veteran's disability picture exhibits other related factors such as those provided by the regulations as "governing norms" is not required, and referral for an extraschedular rating is unnecessary. Thun v. Peake, 22 Vet. App. 111 (2008).

The Board must also consider whether there is a collective effect involving the Veteran's other service connected disabilities acting with the disabilities on appeal, gives rise to a referral for extraschedular consideration. See Johnson v. Shinseki, 762 F.3d 1362 (Fed. Cir. 2014). Here, however, the issue has not been argued by the Veteran or reasonably raised by the evidence of record. The Veteran has not asserted, and the evidence of record does not suggest, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. Thus, there is neither allegation nor indication that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria, and the Board will therefore not address this issue further. See Yancy v. McDonald, 27 Vet. App. 484, 495 (2016).

Finally, pursuant to Rice v. Shinseki, 22 Vet. App. 447 (2009), a claim for a TDIU is considered part and parcel of an increased rating claim when the issue of unemployability is raised by the record. Here, the issue of TDIU has not been raised by the record. The Veteran continues to work, and has at no time alleged he is unable to work due to his service-connected disabilities. As the issue has not been raised by the record, no further discussion is required at this time. 


ORDER

A rating in excess of 10 percent for hypertension is denied.

A rating in excess of 30 percent for GERD is denied.

A rating in excess of 50 percent for migraines is denied.

REMAND

The Veteran last had an examination with regard to his left knee in March 2013. 

The Board observes that a new precedential opinion that directly impacts the issues of entitlement to increased evaluations for left knee disability was issued by the Court. In Correia v. McDonald, 28 Vet. App. 158 (2016), the Court held that the final sentence of 38 C.F.R. § 4.59 creates a requirement that certain range of motion testing be conducted whenever possible in cases of joint disabilities. The final sentence provides that "[t]he joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint." The Court found that, to be adequate, a VA examination of the joints must, wherever possible, include the results of the range of motion testing described in the final sentence of § 4.59. In addition, as relevant to the present case, the Court stated in Correia that knees were "undoubtedly weight-bearing." Id. The March 2013 examination does not show compliance with Correia. 

Accordingly, the Veteran must be afforded a new VA examination to correct all of the deficiencies noted above, and to obtain a more current evaluation of his left knee condition. 

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for an appropriate VA examination to evaluate the service connected left knee condition. 

Pursuant to Correia v. McDonald, 28 Vet. App. 158 (2016), the examination should record the results of range of motion testing for pain on BOTH active and passive motion AND in weight-bearing and nonweight-bearing. 

If the left knee cannot be tested on "weight-bearing," then the examiner must specifically indicate that such testing cannot be done. 

2. After completing the above, the Veteran's claims should be readjudicated based on the entirety of the evidence. If the claims remain denied, the Veteran and his representative should be issued a supplemental statement of the case. 

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
H.M. WALKER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs